# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK MCCANN, et al | : | CIVIL ACTION |
| v. | : | |
| STEVE MILLER, et al | : | NO. 08-561 |

Goldberg, J.                                                                                                                                                                           December 7, 2009

## MEMORANDUM OPINION

This case revolves around a physical altercation occurring at the Philadelphia Airport Marriott on February 8, 2006, between representatives of two unions. At issue are two Motions for Summary Judgment filed by Plaintiffs, who argue that the evidence of record establishes that the owners of the hotel, Defendants Philadelphia Airport Hotel Limited Partnership and Marriott Hotel Services, Inc. (collectively referred to as "Marriott"), breached their duty to Plaintiffs. Marriott has also filed a Motion for Summary Judgment raising the same issue, claiming that there is no evidence supporting Plaintiffs' claims. Because we find that Plaintiffs have not provided sufficient evidence that Marriott breached its duty to Plaintiffs, the claims against Marriott will be dismissed.

**FACTUAL BACKGROUND**

The incident in question arose following the announcement of a merger between US Airways and America West. Prior to the merger, America West workers were primarily represented by the Transport Workers Union (TWU), and US Airways workers were primarily represented by the

1

International Association of Machinists and Aerospace Workers (IAM). Plaintiffs, Frank McCann, Frank Trotti, Jeff Osborne, Joseph Carbone, and Timothy Grandfield, were union organizers for the TWU. In preparation for the merger, and in an attempt to recruit new TWU members, Plaintiffs planned to hold informational meetings at the Philadelphia Airport Marriott on February 7 and 8, 2006. (Marriott's Statement of Undisputed Facts, ¶¶ 1-4).

On the morning of February 8, 2006, Plaintiffs observed a group of men assembled outside of the meeting room. Before their meeting began, three men entered the room and threatened Plaintiffs with violence unless they abandoned the meeting. A few minutes after the three men left, the group of men that had been outside entered the meeting room and attacked Plaintiffs. As a result of the altercation, Plaintiffs suffered numerous physical injuries. (Marriott's Statement of Undisputed Facts, ¶¶ 19-25, 27-29, 32-33).

As a result of this incident, on November 2, 2007, Defendants, David Strange, Anthony Armideo, Robert Gallagher, Jason McGuigan, Robert Carr, Jerry Molinari, Vincent Ceraso and Robert Boland, pled guilty to simple assault and conspiracy to commit assault. Defendants, Michael DeJesse and Jack Johnson, proceeded to trial, and on November 27, 2007, a jury found them guilty of conspiracy to commit assault; not guilty of assault.

On January 31, 2008, Plaintiffs, Trotti, Osborne, Carbone, and Grandfield, filed an action against Marriott and numerous other Defendants. On February 4, 2008, Plaintiff McCann filed a similar action.[1] The complaints generally allege that Marriott breached its duty to Plaintiffs by failing to protect them from injury on the hotel premises and state that:

73. [] Defendant Marriott failed to exercise its special obligations to Plaintiffs who

---

[1] On January 8, 2009, this Court consolidated these two actions under the above-captioned case.

      were its guests and business invitees by:
      a.      failing to provide adequate protection for the meeting at which the assault and battery took place
      b.      failing to warn Plaintiffs about the gathering, riotous crowd of attackers assembled outside of the meeting room where Plaintiffs were located
      c.      failing to have its security personnel intervene for the purpose of protecting Plaintiffs from the riotous and physically harmful acts of Defendants; and
      d.      failing to adequately and promptly respond to the circumstances then and there existing.

(Trotti Complaint, ¶ 73; See also McCann Complaint, ¶ 71).

On June 29, 2009, Plaintiffs filed two Motions for Summary Judgment against Marriott, and Marriott responded with its own Motion for Summary Judgment.

**LEGAL ANALYSIS**

    A. <u>Summary Judgment Standard</u>

Summary judgment may be entered where there are no genuine issues as to any material fact and one party is entitled to judgment as a matter of law. <u>White v. Westinghouse Elec. Co.</u>, 862 F.2d 56, 59 (3d Cir. 1988). The evidence presented must be viewed in the light most favorable to the non-moving party. <u>Id.</u> The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986). The Court's function in deciding a Motion for Summary Judgment is not to decide disputed questions of fact, but only to determine whether genuine issues of fact exist. <u>Id.</u> at 248-249.

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial,

the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

B. Negligence and Innkeeper Liability

Plaintiffs have raised negligence claims against Marriott. To sustain a negligence claim in Pennsylvania, a plaintiff must establish: (1) the existence of a duty; (2) a breach of that duty; (3) a causal relationship between the breach and complained of injury; and (4) actual loss or damage. Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. Ct. 1994).

Generally, absent a pre-existing duty, a party cannot be held liable for the criminal actions of a third party. Feld v. Merriam, 485 A.2d 742, 746 (Pa. 1984). However, in certain situations, a special duty may arise. Section 314A of the Restatement of Torts recognizes four special relationships, which give rise to a duty to protect: 1) common carriers and their passengers; 2) innkeepers and their guests; 3) possessors of land and the public to whom they open their land; and 4) custodial relationships. Restatement (Second) of Torts § 314A. The Restatement explains that:

> The duty in each case is only one to exercise reasonable care under the circumstances. The defendant is not liable where he neither knows nor should know of the unreasonable risk, or of the illness or injury. He is not required to take precautions against a sudden attack from a third person which he has no reason to anticipate, or to give aid to one whom he has no reason to know to be ill. He is not required to take any action where the risk does not appear to be an unreasonable one, as where a passenger appears to be merely carsick, and likely to recover shortly without aid (emphasis added).

Restatement (Second) of Torts § 314A cmt. e. Regarding the possessors of land, the Restatement

4

states that:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third parties or animals, and by the failure of the possessor to exercise reasonable care to
>
> > (a) discover that such acts are being done or are likely to be done, or
> >
> > (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344. In support of their claim against Marriott, Plaintiffs cite to comment f of this section:

> f. Duty to police premises. Since the posessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur.

Restatement (Second) of Torts § 344 cmt. f.

Because it is undisputed that Plaintiffs were staying at the Philadelphia Airport Marriott, using a meeting room on its premises, we find that a special relationship existed between Plaintiffs and Marriott. Therefore, based upon the above cited sections of the Restatement and applicable precedent, the question of whether Marriott owed a duty of care to Plaintiffs depends upon whether Marriott had reason to know that the assault was going to occur. See Lee v. Walmart, Inc., 2003 U.S. Dist. LEXIS 3139 at *10-25 (E.D. Pa. Feb. 13, 2003) (summary judgment granted under § 344, where invitee was attacked by a third party inside defendant's store and invitee had failed to show that defendant should have foreseen actions of a third party); See also Rabutino v. Freedom State Realty Co., 809 A.2d 933, 939 (Pa. Super. Ct. 2002) (citing § 314A and § 344, including the duty to police premises, in analyzing whether a hotel owed a duty to decedent who had been attending a

party a the hotel).

Marriott cites to the following undisputed facts in support of their argument that there is no evidence that it knew of, or should have foreseen, the assault on Plaintiffs.

Before their arrival in Philadelphia on February 6, 2006, Plaintiffs had organized a meeting in Boston. At that meeting, Plaintiffs were told by a rival union member that, "they'd be lucky to get out alive . . . if they come to Philadelphia." (Marriott's Statement of Undisputed Facts, ¶ 5). Although these threats were made, Plaintiffs admitted at their deposition that they did not notify Marriott of any potential security problems. Additionally, several of the Plaintiffs acknowledged that they did not feel any security was necessary. (Grandfield Dep., pp. 154-155, 157-159, 161; McCann Dep., pp. 178-179, 187; Carbone Dep., pp. 52-53; Trotti Dep., pp. 144-145; Osborne Dep., pp. 231-233).

On the morning of February 8, 2006, Plaintiffs noticed a group of men waiting outside the meeting room, however Plaintiffs were not concerned about the group. Even after Plaintiffs were threatened by the three men in the meeting room, Plaintiffs decided not to call security and admitted that they did not anticipate a confrontation. (Grandfield Dep., pp. 164-169; Carbone Dep., pp. 152-159; McCann Dep., pp. 209-210; Osborne Dep., pp. 246-253; Trotti Dep., pp. 145-146).

Thus, based upon these undisputed facts, Marriott urges that there is no evidence establishing that they knew or should have known an assault was about to occur.

In response, Plaintiffs cite to two facts which they allege create an issue of fact that Marriott knew, or should have known, about the incident. First, Plaintiffs claim that:

> Marriott employee Cutie Davis saw the gathering of the IAM mob outside the hotel entrance. She reported this gathering to her superiors Shirley Lewis and Anthony Marziani and expressed her concern at such a large crowd.

6

(McCann Resp. Mem., p. 1). Plaintiffs also point out that Marriott employees were:

> inattentive to the video surveillance equipment . . . and did not investigate. . . . They did not bother to check the video camera which showed a mob marching in step down the bridge into the [meeting room] area.

(McCann Resp. Mem., p. 1).

For several reasons, these facts do not create a sufficient factual dispute necessitating jury resolution. First, Cutie Davis explained in her deposition that although she noticed the group of people referred to above, it was not cause for alarm. She stated that, "I saw a lot of them come over and I notice[d] they had the US Air uniform and just out of curiosity I was just trying to find out if there's a US Air meeting . . . I was not like suspicious, I was just curious." (Davis Dep., pp. 56, 96).

Moreover, while the gathering of persons was observed by Marriott on video, such observations did not put Marriott personnel on notice that an assault was about to occur. Davis did acknowledge that she reported the group of people to her superiors, Marziani and Lewis. However, while Marziani looked at the security cameras, she observed, "a few individuals just gathered here drinking coffee or leaning against the wall looking like anyone else that would have been waiting to go to a meeting." Marziani further explained that, "[w]e always have guests in this area all the time standing there waiting to go in to a function; taking a break." (Marziani Dep., pp. 58-59, 80). These facts are insufficient to create a jury question on whether Marriott should have known an assault was going to ensue. Indeed, this deposition testimony is consistent with the testimony of Plaintiffs, who observed that the group of men outside the meeting room did not look threatening. Consequently, even viewing these facts in a light most favorable to Plaintiff, we find that they have failed to present evidence that Marriott knew or should have known that the assault was about to

occur.[2]

Plaintiff Osborne offers an additional argument in urging that Marriott's Motion be denied. The facts of record reflect that after the altercation commenced, but before he had been touched, Osborne escaped the meeting room through a back door, which led into a hallway with an emergency exit. Osborne attempted to leave through the exit, but the door would not open, and an alarm sounded. At this point, Osborne returned to the meeting room, wherein he was assaulted. (Osborne Decl., ¶ 18).

From these facts, Osborne asserts that the locked emergency exit proximately caused his injuries because it forced him to return to the meeting room. We disagree because consideration of Osborne's entire deposition testimony reflects that even if Marriott breached a duty by having a malfunctioning emergency door on the premises, Osborne was safe in the hallway and took it upon himself to re-enter the room where he was assaulted. Pertinent portions of his deposition state:

> Q: Okay. When you couldn't get out that way, you turned toward your right and went down the hall to your right, correct?
> A: Right.
> Q: And now you got down to a certain point you realized nobody was behind you?
> A: Correct.
> Q: Nobody was chasing you?
> A: Right.
> Q: So you are down the hall by yourself?
> A: Right.
> . . .
> Q: Did you think it was smarter to go back to where you had been attacked?
> A: Buddy, I don't think I was that far along thinking about anything. All I knew was the guys was not behind me and I didn't know where I was going and the only thing I knew - I was concerned about my guys too where they was at. I couldn't believe they wasn't right behind me.
> . . .

---

[2] Plaintiffs did not argue in their response or during argument that Marriott breached its duty of care by inadequately responding to the altercation once the hotel became aware of the situation.

> Q: You are down the hall, you are by yourself, did you take out your cell phone and try to call 911?
> A: No, I did not.
> . . .
> Q: So then you turn around and you consciously start back toward [the meeting room], correct?
> A: Yeah . . .

(Osborne Dep., pp. 270-272).

This testimony establishes that Osborne successfully fled to a place of safety and then consciously returned to the meeting room, where he knew the assaults were occurring. This scenario is insufficient to defeat Marriott's Motion as to Osborne.

In their Motions for Summary Judgment, Plaintiffs raise an additional argument in asserting that Marriott's breach of an alleged duty must be decided in their favor. Specifically, they assert that a duty to protect them as guests of the hotel was breached because Marriott's security cameras failed to properly function. (See generally, McCann's Motion). We find, however, that the evidence of record does not support Plaintiffs' contention and establishes that the cameras were operating properly but may have experienced a recording malfunction.

Marziani was questioned about the cameras at this deposition:

> Q: First of all, do you know whether each of those cameras, C-1, C-2 and C-3, were operational on the 8th of February 2006?[3]
> A: Yes, they were.
> Q: Have you recovered film from each of those cameras from that day?
> A: There was some sort of malfunction with our video recording system. It did not record C-1 and C-2.
> Q: At all?
> A: At all. They were broadcasting, so to speak, in our Loss Prevention Office. They were visible. They were running, but they did not record in to our VHS tapes that we were using at the time.

---

[3] Cameras C-1, C-2 and C-3 were around the outside of the meeting room. There were no cameras inside the meeting room where the altercation occurred.

> Q: Was there somebody monitoring those two cameras?
> A: The loss prevention officers in the office.

(Marziani Dep., pp. 57-58). Based on Marziani's testimony, the recording malfunction had no affect on Marriott's ability to observe whether an altercation was about to occur. As discussed infra, there is no evidence that would have given Marriott notice of an imminent assault and a malfunction in a recording mechanism does not change that conclusion.

Lastly, Plaintiffs Eileen McCann and Tonia Trotti's loss of consortium claims will also be dismissed. "In order to recover under a loss of consortium theory, a party must show the defendant is liable to his or her spouse." McNeal v. City of Easton, 598 A.2d 638, 642 (Pa. Cmwlth Ct. 1991). Having determined that Plaintiffs' negligence claims against Marriott must be dismissed, Eileen McCann and Tonia Trotti's loss of consortium claims against Marriott cannot survive.

**CONCLUSION**

For the foregoing reasons, Marriott's Motion for Summary Judgment is granted, and Plaintiffs' Motions for Summary Judgment are denied.

Our Order follows.