IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK MCCANN, et al | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STEVE MILLER, et al | : | NO. 08-561 |

Goldberg, J.                                                                                                       March 22, 2010

## MEMORANDUM OPINION

This opinion addresses whether the national and local lodges of a union can be held liable for a physical altercation between its members and representatives of another union. Currently before the Court are two Motions for Summary Judgment filed by Defendants, the International Association of Machinists and Aerospace Workers, its officers, Thomas Buffenbarger, Robert Roach, Lynn Tucker (collectively referred to as the "IAM Defendants"), and the International Association of Machinists and Aerospace Workers Local Lodge 1776 ("Local 1776"). Both motions assert that Plaintiffs have not provided sufficient evidence to hold the Defendants liable for the altercation in question. Plaintiffs have also filed two Motions for Summary Judgment claiming that the evidence of record establishes that these Defendants were involved in a conspiracy to assault Plaintiffs.

Because we find that Plaintiffs have not provided adequate evidence that the IAM Defendants were involved in the conspiracy, Plaintiffs' claims against the IAM Defendants will be dismissed. However, as Plaintiffs have provided sufficient evidence of Local 1776's participation in the conspiracy, that portion of the case will proceed to trial.

1

## I. FACTUAL BACKGROUND

The International Association of Machinists and Aerospace Workers (IAM) is a three-tiered international labor organization. The top tier is referred to as the Grand Lodge and is administered by an elected, nine-member Executive Council. The intermediate tier is comprised of District Lodges. The District Lodges generally negotiate and administer collective bargaining agreements on behalf of the members of the Local Lodges, which make up the lowest tier. Approximately 58 District Lodges and over 1000 Local Lodges are affiliated with the IAM. Each District and Local Lodge is a separate and autonomous entity, with its own officers, governance and treasury. The officers of the District and Local Lodges are not authorized to speak or act on behalf of the IAM.

The District Lodge involved in this case is District Lodge 141, which represented the US Airways baggage handlers and other fleet service workers in collective bargaining with the airline. District Lodge 141 is not a party to this case. Defendant Local 1776 is the Local Lodge involved in this case, and represents Philadelphia area members who were employed at US Airways and other airlines. (IAM Defendants' Statement of Undisputed Facts, ¶¶ 1, 3-6; Beck Aff., ¶¶ 16-18).

In addition to the IAM and Local 1776, nineteen (19) individual members of the union are named as defendants in this action. The titles and positions of several of these individual members, as well as two (2) additional union members who are not defendants, are relevant to understanding the motions before the Court. These Defendants are as follows:

- Defendant Thomas Buffenbarger, President of the IAM;
- Defendants Robert Roach and Lynn Tucker, General Vice Presidents of the IAM;
- Randy Canale, President of District Lodge 141, who is not a party to this case;
- Defendant Vincent Addeo, Director of Organizing for District Lodge 15;

- Defendant Anthony Armideo, an officer of District Lodge 141;

- Defendant Robert Boland, President of Local 1776; and

- Steve Miller, an officer of District Lodge 141, who was originally a defendant in this case until the claims against him were dismissed by agreement of the parties.

The altercation in question arose following the announcement of a merger between US Airways and America West. Prior to the merger, America West workers were primarily represented by the Transport Workers Union (TWU), and US Airways workers were primarily represented by the IAM. Plaintiffs, Frank McCann, Frank Trotti, Jeff Osborne, Joseph Carbon, and Timothy Grandfield, were organizers for the TWU. In preparation for the merger, and in an attempt to recruit new TWU members, Plaintiffs planned to hold informational meetings at various locations in January and February 2006, including one at the Philadelphia Airport Marriott on February 7 and 8, 2006. (IAM Defendants' Statement of Undisputed Facts, ¶¶ 9, 11).

According to Plaintiffs, on the morning of February 8, 2006, they observed a group of men assembled outside of the meeting room. Before their meeting began, Defendants Anthony Armideo, Vincent Addeo, and Robert Boland, entered the room and threatened Plaintiffs with violence unless they abandoned the meeting. A few minutes after the three men left the room, the group of men that had been outside entered the meeting room and attacked Plaintiffs. As a result of the altercation, Plaintiffs suffered physical injuries. (Osborne Decl., ¶¶ 10-17; Carbon Decl., ¶¶ 12-17; Trotti Decl., ¶¶ 8-12; Grandfield Decl., ¶¶ 7-10; McCann Decl., ¶¶ 11-13).

On November 2, 2007, numerous persons involved in the February 8, 2006 altercation, including many Defendants in the case before this Court, pled guilty to simple assault and conspiracy

to commit assault.[1] All of the convicted Defendants, with the exception of Anthony Armideo, were members of Local 1776.

On January 31, 2008, Plaintiffs Trotti, Osborne, Carbon, and Grandfield sued the IAM, Local 1776, and numerous other defendants. On February 4, 2008, Plaintiff McCann filed a similar action against the IAM, Buffenbarger, Tucker, Roach, Local 1776 and others. These two cases have been consolidated. Generally, the complaints accuse the IAM Defendants, Local 1776 and other individuals of conspiring to assault Plaintiffs. For instance, pertinent portions of these complaints allege that:

> Defendant Union Officials, acting together with the other Defendant attackers, reached an understanding or agreement, engaged in a course of conduct, and otherwise conspired among and between themselves, and with other unnamed co-conspirators, with the intent to assault and batter the Plaintiffs.

(Trotti Am. Complaint, ¶ 64).

> These defendants listed in paragraphs 8-27 conspired with the other IAM co-defendants and the IAM International and Local 1776 to commit the improper tortious acts referred to above under Pennsylvania law of threats and intimidation and beating and conspiracy.

(McCann Complaint, ¶ 71.c).

On June 29, 2009, Plaintiffs filed two Motions for Summary Judgment against the IAM Defendants and Local 1776, and the IAM Defendants and Local 1776 responded with their own Motions for Summary Judgment. All of the motions essentially raise the same question, which is whether there is sufficient evidence that the two union entities conspired in the February 8, 2006 assault.

---

[1] David Strange, Anthony Armideo, Robert Gallagher, Jason McGuigan, Robert Carr, Jerry Molinari, Vincent Ceraso, and Robert Boland pled guilty to simple assault and conspiracy connected to this attack. Michael DeJesse and Jack Johnson, also connected with the attack, proceeded to trial and on November 27, 2007, were found guilty of conspiracy by jury. (McCann Resp., Exs. O, R).

4

## II. LEGAL ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Brooks v. CBS Radio, Inc., 342 Fed.Appx. 771, 775 (3d Cir. 2009) (citing Fed. R. Civ. P. 56(c)). "In determining whether the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the facts must be viewed, and all reasonable inferences must be drawn, in the light most favorable to the non-moving party." Id. The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). The Court's function in deciding a motion for summary judgment is not to decide disputed questions of fact, but only to determine whether genuine issues of fact exist. Id. at 248-249.

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

**B. The Norris-LaGuardia Act**

The standard for determining whether the IAM and Local 1776 Defendants are liable for Plaintiffs' injuries is provided in section 6 of the Norris-LaGuardia Act ("NLA"):

> No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.

29 U.S.C. § 106. The NLA defines a "labor dispute" as, "any controversy . . . concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c). A case involves a labor dispute where it involves persons who are engaged in the same industry or occupation and is, "between one or more employees or associations of employees and one or more employees or associations of employees." 29 U.S.C. § 113(a)(3). The controversy at issue here falls within this definition because it arises out of a dispute between members of one union with members of a competing union within the airline industry. Because this is a labor dispute under § 113(c), section 6 of the NLA applies.

Under the NLA, the standard to assess union and union officer liability is more restrictive than the common law doctrine of respondent superior. See Carbon Fuel Co. v. United Mine Workers, 444 U.S. 212, 217 n.6 (1979). To establish liability under section 6 of the NLA, a plaintiff must show by "clear proof" that the defendant organization or member actually participated, gave prior authorization, or ratified the offense after actual knowledge of their perpetration. United Bhd. of Carpenters v. United States, 330 U.S. 395, 403 (1947). Under the "clear proof" standard, a plaintiff, "is required to persuade by a substantial margin, to come forward with 'more than a bare preponderance of the evidence to

6

prevail.'" United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 737 (1966) (quoting Schneiderman v. United States, 320 U.S. 118, 125 (1943)).

**C. IAM Defendants' Motion for Summary Judgment**

In their Motion for Summary Judgment, the IAM Defendants argue that Plaintiffs have not presented evidence that establishes by clear proof that the IAM Defendants participated in, authorized, or ratified the conspiracy to assault Plaintiffs. In response, Plaintiffs identify several facts that purportedly support their claim. Tracking the NLA, we divide the facts relied upon by Plaintiff into three groups:

(1) Facts supporting authorization:

- Defendants Addeo and Armideo were "credentialed agents" of the IAM. (Trotti Resp., p. 8).

- "Addeo was specifically authorized in writing by Roach to act with the full authority of the International union. No limitation of any sort was placed by Roach on the scope or extent of that authority." (Trotti Resp., p. 27).

- "Canale was assigned to handle the [merger] on behalf of the [IAM]. Canale then assigned this case to Armideo and Boland." (McCann Resp., p. 4).

(2) Facts supporting participation:

- Canale and Defendants Roach, Armideo and Boland held a series of telephone conference calls to discuss the organizing efforts by the TWU. (McCann Resp., p. 5).

- On the night before the attack, Canale and Defendants Armideo and Addeo attended a Local 1776 meeting. (Trotti Resp., p. 19; McCann Resp., pp. 7-8).

- On February 6, 2006, at a meeting in Boston organized by the TWU, Steve Miller, warned the Plaintiffs that "they would need bullet proof vests and would be lucky to get out [of Philadelphia] alive." (Trott Resp., p. 16).

- After the altercation, Armideo, Boland and Addeo contacted Roach and Canale. (Trotti Resp., p. 29; McCann Resp., p. 9).

(3) Facts supporting ratification:

- The IAM advanced costs and attorneys fees to those union members terminated by US Airways following the altercation. Those members who were convicted were not asked to repay the costs and fees. (McCann Resp., p. 10).

- The IAM did not institute any disciplinary proceedings against the union members implicated in the altercation. (McCann Resp., p. 11).

- Armideo was appointed to a different union position after the altercation. (Trotti Resp., p. 21).[2]

Plaintiffs argue that these facts, when viewed in a light most favorable to them, provide clear proof that the IAM Defendants participated in, authorized or ratified the assault.

(1) <u>Authorization</u>:

To show "authorization" under section 6, a plaintiff must provide clear proof that a union had expressly authorized the agent to engage in the particular act charged or in acts generally of that type and quality, or that the agent's actions necessarily followed from the granted authority. Carpenters, 330 U.S. at 406-407. For several reasons, the facts cited by Plaintiffs do not support their claim that Addeo and Armideo were authorized to act on behalf of the IAM.

First, Plaintiffs highlight that both Addeo and Armideo carried credential cards, which state that the card carrier, "is duly authorized to represent the Grand Lodge of the International Association of Machinists and Aerospace Workers in all matters to which he/she may be assigned . . . ." (Trotti Resp., Exs. 15, 17). However, it is undisputed that neither Addeo or Armideo was assigned to represent the IAM in any dispute between the IAM and TWU, which allegedly led to the altercation at issue.

---

[2]Plaintiffs assert that Armideo was promoted. They support this claim by citing that Armideo made $97,000 per year at his prior position, when he left in August of 2007, and he made $103,000 per year in his new position at the time of his deposition in January of 2009. (Trotti Resp., p. 21; Armideo Dep., p. 261). However, according to the IAM Defendants, Armideo was appointed to an equal position. (IAM Reply, p. 6).

8

Plaintiffs further point to the letter from Roach to Addeo, assigning Addeo, "to work with the Transportation Department in defending our Organization against a raid by the Teamster Organization." (Trotti Resp., Ex. 19). As Defendants correctly point out, this letter does not grant Addeo authority to act on behalf of the IAM regarding the TWU dispute. Rather, the letter grants Addeo authority to act in a separate dispute with the Teamsters.

Plaintiffs also claim that Canale had been assigned by the IAM to deal with the TWU dispute and that Canale in turn assigned Armideo to the task. Plaintiffs thus argue that Armideo was acting on behalf of the IAM on February 8, 2006. The undisputed record does not support Plaintiffs' position. While Plaintiffs' have pointed to facts establishing that Canale, District Lodge president, did assign Armideo to help with the TWU situation, they have not provided any evidence that Roach or any officer from the IAM authorized Canale to act on its behalf regarding the TWU. (Canale Dep., p. 132). Therefore, none of the facts cited by Plaintiffs support their position that Addeo and Armideo had been authorized to act on behalf of the IAM.

(2) <u>Participation</u>:

Plaintiffs have also failed to present evidence that the IAM Defendants participated in the conspiracy. Plaintiffs have cited to the telephone conferences between Roach, Canale, Armideo and Boland.[3] However, these conferences have been described by Roach and Armideo simply as status updates as to the situation with TWU. (Roach Dep., p. 128; Armideo Dep., p. 95). Importantly, Plaintiffs have offered no evidence that the altercation was planned during these telephone conferences.

---

[3] Neither party has provided the Court with evidence from the record as to how many telephone conferences took place, or the respective dates.

In a further attempt to implicate the IAM Defendants, Plaintiffs point to the meeting held by the Local 1776 on February 7, 2006, but Plaintiffs have not provided this Court with any evidence as to what was discussed during this meeting, except for Boland's description that it was a general meeting with financial reports on the agenda. (Boland Dep., p. 133). Plaintiffs have provided no evidence that the altercation was planned at this time.

In short, Plaintiffs would have us draw the inference that because discussions took place between the IAM Defendants and persons involved in the altercation prior to February 8, 2006, the IAM Defendants must have been a part of the conspiracy. (McCann Resp., p. 7). We, however, find that such an inference is impermissible where Plaintiffs have failed to identify any evidence that the altercation was planned or discussed during the telephone conferences or the meeting.

With regards to Armideo, Boland and Addeo's contact with Roach after the altercation, Plaintiffs have also failed to articulate why this fact tends to establish the IAM's involvement in a conspiracy. According to Roach's uncontradicted testimony, on February 8, 2006, Armideo, Boland and Addeo "called [Roach] and said there was some sort of confrontation at [the Philadelphia Airport Marriott] and that the police were called and that they wanted to speak to somebody from the legal department." (Roach Dep., pp. 75-76). Roach then put them in touch with the legal department. We find that this conversation consists of little more than Armideo, Boland and Addeo informing Roach of the altercation and their potential involvement, and it in no way evidences that Roach or the IAM participated in the conspiracy.

Lastly, with regards to the threat by Miller two days before the altercation, we note that Plaintiffs have not produced any evidence that Miller, a District Lodge officer, was acting on behalf of the IAM.

(3) <u>Ratification</u>:

Plaintiffs have also not presented clear proof that the IAM Defendants ratified the conspiracy to assault Plaintiffs. In order to hold a union or its officers liable on a ratification theory under Section 6 of the NLA, "[w]hat is required is proof, either that the union approved the violence which occurred, or that it participated actively or by knowing tolerance in further acts which were in themselves actionable under state law or intentionally drew up the previous violence for their force." <u>Gibbs</u>, 383 U.S. at 739. Plaintiffs argue that the IAM's provision of legal services and its decision not to pursue disciplinary proceedings against its members is sufficient evidence of ratification. Plaintiffs also assert that Armideo's appointment to a new position after the altercation establishes ratification.

We find that the IAM's provision of legal services is not evidence of ratification. Courts have held that a union will not be held liable for performing "normal union functions." <u>United Steelworkers of America v. Lorain</u>, 616 F.2d 919, 921 (6th Cir. 1980) (citing <u>Gibbs</u>, 383 U.S. at 738-739). These normal functions include providing legal representation to members who may have engaged in illegal acts. <u>See</u> <u>Falls Stamping and Welding Co. v. International Union</u>, 744 F.2d 521, 526 (6th Cir. 1984). Here, the IAM performed such a normal union function when it provided legal services to its members. Following the altercation, the IAM sent the involved members a letter, which stated:

> The IAM will pay your legal fees and expenses so long as you are not formally charged with a crime. If you are so charged in connection with the February 8 incident, the IAM will cease paying you legal fees and expenses and will have the right to seek repayment by you of the fees and expenses advanced by the IAM. If you are charged with a crime but you are not convicted, you may request reimbursement from the IAM of legal fees and expenses you personally incurred in connection with this matter.

11

(Canale Dep., Ex. 4A). Accordingly, the IAM paid the legal fees and expenses for members involved in the altercation, up until the time that they were criminally charged. For members whose charges were dismissed, the IAM reimbursed them for any additional legal fees. For members who pled or were found guilty, the IAM did not pay any additional legal fees. (Beck Decl., ¶¶ 22-23). The IAM did not seek repayment of the fees by the criminally convicted members. Because the IAM was performing a normal union function by advancing legal fees and costs to its members, we find that the IAM Defendants did not ratify the altercation.

Additionally, the failure to initiate disciplinary proceedings against members is not evidence of ratification. Union discipline is "a purely internal matter" and "a step [the union] was not required to take." United Steelworkers of America v. Lorain, 616 F.2d 919, 923 (6th Cir. 1980).

Finally, Armideo's appointment to a new position after the altercation is not enough to defeat the IAM Defendants' Motion. It is undisputed that on August 1, 2007, Armideo was appointed to the position of business representative for District Lodge 1. (IAM Defendants' Statement of Undisputed Facts, ¶ 43). According to Armideo, Defendant Tucker appointed him to the new position. (Armideo Dep., pp. 264-65). It is also undisputed that this appointment came before Armideo pled guilty, but after the IAM was aware of his involvement in the altercation.

The prevailing case law on ratification under section 6 states that, "if [a union] continues [an agent] in a previous position of high responsibility after knowledge of his illegal activities, section 6 affords no shelter." Yellow Bus Lines, Inc. v. Drivers, Chauffers & Helpers Local Union 639, 883 F.2d 132, 137 (D.C. Cir. 1989) (quoting Harlem River Consumers Coop., Inc. v. Associated Grocers of Harlem, Inc., 450 F.2d 271, 273-274 (2d Cir. 1971)). In Yellow Bus, the D.C. Circuit found that a local union had ratified strike violence where an official of the local union participated in the

12

violence and where "there is nothing in the record to indicate that the union took action to investigate the allegation [of violence] or to curb and excesses of [the official]," despite its knowledge of the official's actions. Yellow Bus, 883 F.2d at 136. In Harlem River, the Second Circuit held that a union could be liable under Section 6 where the union had knowledge of its business agent's illegal activities related to an ongoing strike but failed to replace him or terminate his control of the strike. Harlem River, 450 F.2d at 274. These cases apply in the context of a union's knowing toleration of illegal actions by a union official, and failure to take steps to stop the official.

Here, the IAM never knowingly tolerated Armideo's illegal actions. Armideo never acted as an agent for the IAM, and his illegal acts were not ongoing. Further, we have already held that the IAM was under no duty to institute disciplinary proceedings against Armideo and cannot be liable for allowing him to continue in his position. Therefore, we find that Armideo's appointment to a comparable or higher position does not establish by clear proof that IAM ratified the actions of Armideo.

In sum, considering the undisputed facts in the light most favorable to Pliantiffs, we find that the IAM Defendants are entitled to judgment as a matter of law because Plaintiffs have not presented sufficient proof that the IAM authorized, participated or approved of the altercation.

### D. **Local 1776's Motion for Summary Judgment**

Local 1776 has also filed a Motion for Summary Judgment, arguing that Plaintiffs have not presented evidence that by clear proof shows that the local union participated in, authorized, or ratified the conspiracy to assault Plaintiffs. In its Motion, Local 1776 cites to the affidavit of Winston Speir, and argues that "the violence [on February 8, 2006] was spontaneous, the result of unexpected provocation by three of the five plaintiffs." (Local 1776's Mem., p. 5). According to Local 1776,

13

because the violence was "spontaneous," the local union could not have been involved in the conspiracy.

We find, however, that Plaintiffs have produced sufficient evidence that the Local 1776 participated in the incident. First, Boland, the President of the Local 1776, personally participated in the incident and subsequently pled guilty to conspiracy and simple assault. Furthermore, eight (8) other members of Local 1776 pled guilty to conspiracy and simple assault. Lastly, Boland, as Local 1776 President, requested from US Airways that certain union members be given off of work in order to attend the February 8, 2006 meeting. (Boland Dep., pp. 333-336). These facts would sufficiently allow a jury to find that the local union participated in the conspiracy to assault Plaintiffs. Consequently, Local 1776's Motion shall be denied.

### E. **Plaintiffs' Motions for Summary Judgment**

Plaintiffs have also filed Motions for Summary Judgment against both the IAM Defendants and Local 1776. As stated above, we find that Plaintiffs have not produced evidence, which would provide clear proof that the IAM Defendants participated, authorized or ratified the altercation on February 8, 2006. Therefore, Plaintiffs' Motions as to the IAM Defendants shall be denied.

With regards to Local 1776, and as noted above, we find that there remain genuine issues of material fact as to whether the local union participated in the incident. Although, Boland testified that he did not think there would be physical violence immediately prior to the altercation, there remains an issue of fact as to when the agreement to assault was reached and whether the local union participated in that agreement. Therefore, Plaintiffs' motions as to Local 1776 shall be denied.

## III. **CONCLUSION**

For the foregoing reasons, the IAM Defendants' Motion for Summary Judgement shall be granted. Local 1776's Motion for Summary Judgment shall be denied, and Plaintiffs' Motions for Summary Judgment against the IAM Defendants and Local 1776 shall be denied. Our Order follows.